**In re A.J. MACKAY COMPANY, Debtor.**

**BILL RODERICK DISTRIBUTING, INC., Appellant,**

v.

**A.J. MACKAY COMPANY, Appellee.**

Civ. No. C–84–1236W.

United States District Court, D. Utah, C.D.

June 27, 1985.

---

Everett E. Dahl, Ronald E. Kunz, Midvale, Utah, for appellant.

William Thomas Thurman, Joel T. Marker, Salt Lake City, Utah, for appellee.

## MEMORANDUM DECISION AND ORDER

WINDER, District Judge.

This case is an appeal from the bankruptcy court. Appellant Bill Roderick Distributing, Inc., ("Roderick") claims that the bankruptcy court erred in staying Roderick's debt collection proceedings against Clayton Mackay, a non-bankrupt codebtor with appellee A.J. Mackay Co. ("Mackay Co.") on the debt to Roderick. Appellant Roderick is represented by Everett E. Dahl and Ronald E. Kunz. Appellee Mackay Co. is represented by William Thomas Thurman and Joel T. Marker. Both sides have briefed the issues on appeal, and neither side requested oral argument. The court has carefully considered the briefs submitted by counsel and various relevant authorities. The court now renders the following decision.

### The Facts

Clayton Mackay was previously a principal of Mackay Co., and currently works as a consultant to the company. In July, 1982, Mr. Mackay signed as a personal guarantor for a line of credit extended to Mackay Co. by Roderick. Mackay Co. subsequently drew on this line of credit.

On January 21, 1983, Mackay Co. filed for bankruptcy under Chapter 11. Clayton Mackay did not file for bankruptcy. Subsequent to Mackay Co.'s filing, Roderick obtained a state court default judgment against Clayton Mackay on the debt Mackay Co. had incurred by drawing on the line

of credit. Rather than execute on the entire judgment immediately, Roderick agreed to allow Clayton Mackay to pay the judgment in monthly installments of $500.

On June 5, 1984, the bankruptcy court confirmed Mackay Co.'s amended plan of reorganization. Roderick had received notice of the plan and had not objected to it. Under the plan, Clayton Mackay was personally protected from creditors in addition to the statutory protection given the debtor, Mackay Co. Paragraph 4.21 of the confirmed plan provides, in part, that

> As long as Debtor is current under the Plan, no claims may be maintained against Clayton Mackay. Nothing shall be construed herein to grant CLayton [sic] Mackay a discharge of his debts.

Amended Plan ¶ 4.21, at R. 76 (this is the first of two paragraphs labeled 4.21), as amended by the Order Confirming Plan of Reorganization, at R. 115 (June 4, 1984). The plan later gives this same protection to all codebtors of Mackay Co.

> As long as Debtor is current on its payments under this Plan, no creditor shall have any rights to proceed against third parties who may be obligated on a debt provided for under this Plan.

Amended Plan ¶ 5.4, at R. 79.

Relying on the terms of the confirmed plan, Clayton Mackay ceased making payments to Roderick. In August, 1984, Roderick resumed state court action against Mr. Mackay by requesting an Order in Supplemental Proceedings in state court. On August 15, 1984, Mackay Co. filed a motion in federal bankruptcy court requesting an Order Staying Creditor. Mackay Co. asked the bankruptcy court to prevent Roderick from pursuing its claim against Clayton Mackay by forcing Roderick to abide by the terms of the confirmed plan.

The bankruptcy court granted Mackay Co.'s motion, staying Roderick from pursuing its claim against Clayton Mackay. The bankruptcy court found that both the proposed plan and the disclosure statement clearly stated that Mr. Mackay would be protected under the plan. Transcript of Sept. 25, 1984, Proceedings, at 13 [hereinafter cited as "Trans."] The court further found that Roderick had notice of the plan and did not object to it. *Id.* Finally, the court found that Roderick had effectively accepted the plan and was therefore bound by its terms, since a confirmed plan has the force of a judgment. *Id.*

The issue on appeal is whether the bankruptcy court properly stayed Roderick from pursuing its claim against Clayton Mackay. Appellant Roderick argues that the bankruptcy court had no jurisdiction to stay Roderick's pursuit of Mr. Mackay. Appellee Mackay Co. counters by arguing that Roderick should have argued the jurisdictional issue at the confirmation hearing, and that it is barred by res judicata from raising the issue now. This court agrees with appellant Roderick, and therefore reverses the bankruptcy court's order staying Roderick from pursuing its judgment against Clayton Mackay. The court also holds that the contested provisions of the confirmed plan must be deleted, since they go beyond the bankruptcy court's jurisdiction.

### Res Judicata

■ Although the issue of res judicata is discussed by both parties, it is not an issue in this case. Res judicata acts as a bar only when a court is asked to take an action which would effectively modify or reverse the judgment of another court in a case the first court is not reviewing on appeal. That is not the case here. The bankruptcy court is not barred by res judicata from modifying its own prior decision in the same case. Nor is this court barred by res judicata when reviewing a case on appeal.

■■ It is true that there are limits on a bankruptcy court's power to revoke a plan it has previously confirmed. *See, e.g.,* 11 U.S.C. § 1144.[1] This court is also limit-

---

1. A confirmed plan can be revoked by the bankruptcy court only if the confirmation order was procured by fraud, and then only if an interested party makes a motion within 180 days of the

ed in what issues and orders it can review on appeal from bankruptcy court. *See, e.g.,* 28 U.S.C. § 1334(b); Bankr. R. 8002. Although these limitations are similar to res judicata, they are independent of it. Res judicata itself is simply not an issue in this case.

The case appellee Mackay Co. most heavily relies on, *Levy v. Cohen,* 19 Cal.3d 165, 137 Cal.Rptr. 162, 561 P.2d 252, *cert. denied,* 434 U.S. 833, 98 S.Ct. 119, 54 L.Ed.2d 94 (1977), is a proper application of res judicata. In that case, a state court was faced with an issue that had already been finally decided by a federal bankruptcy court. The *Levy* court held that none of the issues that were decided, or could have been decided, in the bankruptcy court could be relitigated in state court. That classic example of res judicata is not repeated in this case. No court has been asked in this case to decide an issue that has been finally decided by a different court. Consequently, *Levy* is inapplicable. There is no bar of res judicata in this case.

### Modification of Confirmed Plans

█ The first issue that must be addressed is whether a Chapter 11 plan can be modified after it has been confirmed. The circumstances under which a confirmed plan can be revoked are extremely limited.

> On request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if and only if such order was procured by fraud. An order under this section revoking an order of confirmation shall—
>
> (1) contain such provisions as are necessary to protect any entity acquiring rights in good faith reliance on the order of confirmation; and
>
> (2) revoke the discharge of the debtor.

11 U.S.C. § 1144. Moreover, Fed.R.Civ.P. 60(b), which allows revocation of prior judgments and orders, cannot be used to bypass the strict requirements of § 1144. *See* Bankr.R. 9024. However, both § 1144 and Rule 9024 expressly prohibit only revocation of the confirmed plan. It is unclear whether they also prevent any and all modifications to a confirmed plan. This court holds that they do not.

A bankruptcy proceeding where a chapter 11 reorganization plan is confirmed differs markedly from a typical civil case in federal district court. Once a judgment is rendered in a typical case, the case is over. The court rendering the judgment generally has jurisdiction over only a few ancillary administrative matters, such as attorney's fee awards, once a final judgment has issued. In a bankruptcy case, however, the confirming of a plan of reorganization is in some ways only the beginning of the case. The bankruptcy court generally retains broad jurisdiction over a case even after a plan has been confirmed. *See, e.g.,* Amended Plan Art. VIII, at R. 80–81. This jurisdiction is necessary to settle disputes concerning the administration of the plan as they arise, and to ensure that changes in the reorganized debtor's financial condition are handled equitably.

Because a bankruptcy case continues after a plan has been finally confirmed, the need for opportunity to correct mistakes in the confirmed plan is greater than in a federal civil action where the case terminates after a final judgment is entered.

> The bankruptcy principles previously stated ... may be distinguished from those obtaining in federal civil actions because of the distinctive nature of bankruptcy proceedings. A bankruptcy proceeding is one continuous, often long, proceeding, within which many other controversies and proceedings occur during the course of administration. There is practical utility in the application of a rule which permits the vacation or modification of bankruptcy orders where subsequent events presented during admin-

entry of the confirmation order. 11 U.S.C. § 1144. The Bankruptcy Rules and Act provide no other means for a bankruptcy court to re-

voke its confirmation of a plan. Bankr.R. 9024(3); *In re Newport Harbor Assocs.,* 589 F.2d 20, 23 (1st Cir.1978).

**760**

istration demonstrate the necessity therefor; and to do so would not be inequitable. Nor does the relatively unlimited power thus invoked raise any unanswerable objections of hardship or uncertainty when it is applied pursuant to well established bankruptcy principles. (Footnotes omitted.)

*In re Texlon Corp.,* 596 F.2d 1092, 1101 (2d Cir.1979) (quoting 7 Moore, *Federal Practice* ¶ 60.18, at 215 (2d ed. 1978)).

If a bankruptcy court later finds that a plan it earlier confirmed contains an error, the court should not be required to slavishly follow its earlier mistake. Finality of judgments is indeed important, but so is correctness. There are times and circumstances which justify sacrificing finality for correctness. As Judge Learned Hand pointed out, there is no reason why all bankruptcy court judgments must be final as rendered.

> Why it is desirable that their orders, ruat coelum, should be as immutable as the Twelve Tables, once the ink is dry, we cannot understand.

*In re Pottasch Bros. Co.,* 79 F.2d 613, 616 (2d Cir.1935).

The Bankruptcy Act does authorize a bankruptcy court to modify a confirmed plan in limited circumstances.

> The proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title. Such plan as modified under this subsection becomes the plan only if circumstances warrant such modification and the court, after notice and a hearing, confirms such plan as modified, under section 1129 of this title.

11 U.S.C. § 1127(b). Section 1127(b) clearly applies only to modifications proposed by

the proponent of the plan or the reorganized debtor. Therefore, it does not apply in this case. It is persuasive evidence, however, that modifications to a confirmed plan are treated differently than complete revocations, and that modifications can be made in a broader range of circumstances than permitted by the narrow restrictions of § 1144.

If there is anything that a bankruptcy court, using its discretion, should be able to modify after confirmation of a Chapter 11 plan, it is any provision of the plan that governs persons or property outside of the court's jurisdiction. As discussed below, the provisions of the confirmed plan at issue here are beyond the bankruptcy court's jurisdiction. The bankruptcy court had neither in rem nor in personam jurisdiction to protect Clayton Mackay from his creditors. Consequently, the bankruptcy court should have deleted those provisions from the confirmed plan when they were challenged.

In short, this court holds that a bankruptcy court does have the equitable power to modify a Chapter 11 confirmed plan of reorganization so long as the court still has jurisdiction over the case.[2] A bankruptcy court has the power, in its discretion, to delete provisions of the confirmed plan that it did not have the jurisdiction to confirm. This discretion must be exercised with an eye to the rights of those who may be prejudiced by modifying a plan they reasonably relied upon. *Cf. Wayne United Gas Co. v. Owens-Illinois Glass Co.,* 300 U.S. 131, 137–38, 57 S.Ct. 382, 385–86, 81 L.Ed. 557 (1937) (effectively overruled by Bankr. R. 8002, but the principle of not prejudicing reasonable reliance is still valid). In this case, the bankruptcy court on remand should take appropriate steps to ensure that Clayton Mackay will not be unfairly prejudiced by relying on the protection the confirmed plan gave him until this decision eliminated that protection.

---

**2.** Because of the delicacy of the reorganization process, modifications should be allowed after confirmation only in extreme circumstances. *See In re Newport Harbor Assocs.,* 589 F.2d 20,

22–24 (1st Cir.1978). Errors that can be corrected without drastically affecting the entire reorganization process should, however, be corrected.

*Bankruptcy Court Jurisdiction*

■ A fundamental principle of jurisdiction is that judgment on an issue is binding only as to the parties or property before the court. A court has no jurisdiction to issue a judgment unless either in rem or in personam jurisdiction has been invoked over the property or persons the judgment concerns. Neither the rights nor liabilities of a third person not a party to a lawsuit can be adjudicated in that lawsuit.[3] Moreover, if jurisdiction is in rem, the judgment can affect only property over which jurisdiction has been properly invoked. The court's jurisdiction extends only to the parties to a lawsuit or to the property directly involved in the lawsuit.

■ That fundamental principle of jurisdiction was violated by the bankruptcy court when it confirmed Mackay Co.'s plan. The confirmed plan contains two provisions which purport to protect Clayton Mackay from creditor's claims. These provisions are beyond the authority of the bankruptcy court to confirm, since Clayton Mackay is not a party to this lawsuit and these provisions do not involve assets of the bankruptcy estate. Consequently, this court finds that these provisions cannot be enforced, and that the stay preventing Roderick from pursuing its claim against Clayton Mackay is invalid. The bankruptcy court's order is reversed.

The plan confirmed by the bankruptcy court purported to give a non-bankrupt debtor protection against creditors. However, the protection available under Chapter 11 against creditors is available only to a debtor. The only way a person can take advantage of that protection is to himself file for bankruptcy under Chapter 11. The jurisdiction over a debtor and his property necessary to protect them from creditors can properly be invoked only by filing for bankruptcy.

Since Clayton Mackay and Mackay Co. are legally distinct, independent "persons," Clayton Mackay is not himself a debtor in bankruptcy. *See In re Aboussie Bros. Constr. Co.*, 8 B.R. 302 (E.D.Mo.1981); *In re Old Orchard Inv. Co.*, 31 B.R. 599, 601 (W.D.Mich.1983) (noting that partners and a bankrupt partnership are not distinct legal entities, but a bankrupt debtor and its guarantors are distinct). Nor can Clayton Mackay's property be considered the debtor's property. *See In re Lion Capital Group*, 44 B.R. 690, 701 (Bankr.S.D.N.Y. 1984). Consequently, Clayton Mackay is not entitled to share in the protection given the debtor in bankruptcy, Mackay Co.

While Clayton Mackay would be a party to this case if he is a creditor of Mackay Co., that would not entitle him to the protection afforded a debtor. The difference between a debtor and a creditor is analogous to the difference between a plaintiff and a defendant. Just as a court cannot award any affirmative relief to a defendant unless he files a counterclaim or cross-claim and thus becomes a plaintiff as well as a defendant, a creditor is not entitled to any protection under the bankruptcy laws unless he becomes a debtor by filing for bankruptcy. A debtor can invoke the jurisdiction of the bankruptcy court and become entitled to protection of himself and his property only by filing for bankruptcy. A non-bankrupt debtor is not entitled to bankruptcy protection.

To allow a non-bankrupt codebtor to be protected from his creditors would be to allow a codebtor to enjoy the benefits of bankruptcy without having to suffer any of its accompanying drawbacks. The codebtor would be protected at the expense of the creditor, who might not have some of the protections it is entitled to under the federal bankruptcy system. The codebtor could savor the sweet without having to taste the sour. The careful balance between the debtor's rights and the creditor's rights that Congress struck in creating the bankruptcy system would be destroyed.

---

**3.** Of course, a non-party third person can become tangentially involved in a case. For example, a third person can contractually agree with a party to perform some action as part of the settlement of a case. But a court cannot give that agreement the force of law, since it cannot render a binding judgment as to the non-party third person.

■ Some courts have found that non-bankrupt codebtors can be protected from their creditors if necessary to prevent "pressure" on the bankrupt codebtor. *See In re Otero Mills, Inc.*, 25 B.R. 1018 (D.N.M.1982), and its numerous progeny. However, this court believes that *Otero Mills* and its progeny were wrongly decided. *See In re Venture Properties, Inc.*, 37 B.R. 175, 176 (Bankr.D.N.H.1984). In a Chapter 11 case, the only properly invoked jurisdiction is that over the debtor himself and his property. To hold that the bankruptcy court also has jurisdiction over anyone that might "pressure" the debtor or over any property that might "assist" the debtor in reorganizing is to expand jurisdiction beyond limit. Jurisdiction exists only over the debtor and his property, and no further.

This court is convinced that stays preventing creditors from proceeding against non-bankrupt codebtors are granted all too often. A bankruptcy court does not have the jurisdiction to grant such a stay simply to "assist" the debtor in reorganizing, or to relieve "pressure" on the debtor. If such a stay is properly within the court's jurisdiction at all, it is only in extraordinary cases where a stay is required to allow the legal process to proceed. The stay can be used only for procedural purposes, not as substantive relief.

It is clear that Clayton Mackay's lack of protection under the confirmed plan may prevent the debtor, Mackay Co., from being able to reorganize. Be that as it may, the bankruptcy court had no power to protect Clayton Mackay from his creditors unless he personally filed a bankruptcy petition and thus invoked the bankruptcy court's jurisdiction over himself and his property. *See In re Aboussie Bros. Constr. Co.*, 8 B.R. 302, 303 (E.D.Mo.1981). The bankruptcy court is limited in its authority to carry out the provisions of the federal bankruptcy statutes by the fundamental requirements of jurisdiction. It cannot exceed those limits no matter how compelling the need to do so. *Cf. Mahaffey v. E–C–P of Arizona, Inc.*, 40 B.R. 469, 474 (Bankr.D.Colo.1984)

■ While this court holds that a non-bankrupt codebtor cannot be protected from his creditors through provisions in a confirmed plan, it does not hold that, in extraordinary cases, a non-bankrupt codebtor cannot be protected prior to confirmation of a plan. In order for a beleaguered debtor to prepare a proposed plan of reorganization, it may be necessary to protect the codebtor principals of the debtor from their creditors to allow them time to do the necessary work. This protection must end, however, when the plan is confirmed. If the protection does not end at that point, it is the codebtor who is being protected, not the debtor.

Some courts have identified 11 U.S.C. § 105 as a source of jurisdictional power to stay creditor actions against non-bankrupt codebtors. *See, e.g., In re Landmark Air Fund II*, 19 B.R. 556, 599 (Bankr.N.D.Ohio 1982). While that may be true for temporary stays that terminate when a plan is confirmed, it is not true for a stay which is embodied in a confirmed plan or which extends beyond confirmation. A bankruptcy court judgment must be based on either in rem or in personam jurisdiction that has been properly invoked. Section 105 does not supplant that requirement. Instead, the broad, rather vague, jurisdictional powers of § 105 are constrained by that fundamental jurisdictional requirement.

As long as the protection ends at confirmation, the power to stay creditors is similar to the power to subpoena non-party witnesses or to impose sanctions against non-party witnesses who are in civil contempt. Such powers are necessary to enable a court to properly conduct the adjudicatory process. They are procedural powers, not substantive powers. They must be used only to properly proceed to a final judgment, and can have no effect on the final judgment or after the final judgment. Consequently, while a stay may be an appropriate exercise of power in extraordinary cases to enable a proposed plan to be prepared, it cannot be a part of a confirmed plan. *Cf. In re Larmar Estates, Inc.*, 5

B.R. 328, 331 (Bankr.E.D.N.Y.1980) (noting that the issue was whether a stay could issue until a plan was confirmed or the case was converted to a Chapter 7 case).

In this case, the bankruptcy court did not directly address the jurisdictional issues. Instead, the bankruptcy court analogized the proposed plan of reorganization to a proposed agreement between Mackay Co. and Roderick. Trans. at 13. The "agreement" was that Roderick would not pursue its claim against Clayton Mackay if Mackay Co. kept current in its payments under the plan. Because Roderick did not object to the plan, it is deemed to have accepted it. Since it accepted the agreement, the bankruptcy court held that it is now bound by that agreement.

There is no doubt that Roderick and Mackay Co. could make such an agreement if they chose. If they did agree to that, their agreement could be made into a binding contract. However, a court cannot give such an agreement the force of a binding judgment. A court has no jurisdiction to enter a judgment concerning persons or property when jurisdiction over the persons or property has not been properly invoked. That is true whether the judgment was actually entered as a court-approved settlement agreement, a default judgment, or a confirmed bankruptcy reorganization plan. The only binding judgment a court can enter is one which concerns the issues and the parties or property that are properly before it.

■ The fact that Roderick had notice of the proposed amended plan with its provisions protecting Clayton Mackay does not preclude Roderick from later contesting the terms of the plan. Jurisdiction exists only when properly invoked. A person does not become a party to a case simply because one or both parties to the case know that the judgment purports to set forth that person's rights or liabilities. Even if all parties consented to the court's jurisdiction over a non-party person, the court would not have jurisdiction unless that person were properly made a party.

Clayton Mackay was not entitled to any protection from creditors because he was not a debtor in bankruptcy. Thus he had not properly invoked the bankruptcy court's jurisdiction over him. Moreover, since assets of the Mackay Co. were not directly involved, no in rem jurisdiction had been properly invoked. Because jurisdiction had not been properly invoked, the question of whether Roderick had notice of the contested provisions is irrelevant.

This court does not decide the issue of whether res judicata bars a creditor from raising this type of jurisdictional issue in another court. Perhaps res judicata does act as such a bar. *See Levy v. Cohen*, 19 Cal.3d 165, 137 Cal.Rptr. 162, 561 P.2d 252, *cert. denied*, 434 U.S. 833, 98 S.Ct. 119, 54 L.Ed.2d 94 (1977). Perhaps not. This court does hold, however, that the bankruptcy court below cannot enforce the provisions of the confirmed plan that purport to protect Clayton Mackay. Those provisions must be deleted from the confirmed plan.

One further point deserves brief mention. There is an automatic stay for non-bankrupt codebtors that applies in Chapter 13 bankruptcy cases to "consumer debts." 11 U.S.C. § 1301. Although there is no corresponding automatic stay applicable in Chapter 11 cases, the existence of a stay in Chapter 13 cases could be read as an indication that a comparable stay may be appropriate in Chapter 11 cases. This court holds that it cannot be so read.

First, the stay of Chapter 13 is "finely tuned." H.R. Rep. No. 95–595, 95th Cong., 1st Sess. 123 (1977), U.S. Code Cong. & Admin.News 1978, p. 5787. It is very narrow in application, applying only to consumer debts in certain circumstances. In contrast, the provisions of the confirmed plan at issue here are very broad. One of the provisions is so broadly drafted that it purports to protect Clayton Mackay against all claims by any of his creditors. *See* Amended Plan ¶ 4.21, at R. 76 (the first of two paragraphs labeled 4.21). The broad stay granted Clayton Mackay is not

even comparable to the finely tuned stay of 11 U.S.C. § 1301.

Second, the automatic stay of 11 U.S.C. § 1301 may itself be invalid. Although Congress apparently believed the statute to be constitutionally valid when it enacted it, see H.R. Rep. No. 95–595, 95th Cong., 1st Sess. 123 (1977), the validity of the § 1301 stay is not without question. Because the question of the validity of § 1301 is not before this court, this court will not answer it. This court does hold, however, that a bankruptcy court lacks the jurisdiction to protect a non-bankrupt codebtor from his creditors in Chapter 11 cases.

This court, in summary, holds that there is a jurisdictional line beyond which a bankruptcy court cannot go in confirming a Chapter 11 reorganization plan. In this case, the confirmed plan is beyond that line. This court will not attempt to define exactly where that line lies, nor will it attempt to decide whether the § 1301 automatic stay falls within or without that line. All that is decided here is that the bankruptcy court was without the power to protect Clayton Mackay from his creditors. The provisions of the confirmed plan which purport to afford Mr. Mackay that protection are invalid and cannot be enforced.

Accordingly,

IT IS HEREBY ORDERED that the provisions of the confirmed plan which purport to protect Clayton Mackay be deleted from the confirmed plan. IT IS FURTHER ORDERED that the bankruptcy court's order staying Roderick from pursuing its claim against Clayton Mackay is reversed. The stay protecting Clayton Mackay is hereby lifted. This case is remanded to the bankruptcy court for any further proceedings not contrary to this decision.